UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| ROBERT CHAMBERS, | : | |
|     Plaintiff, | : | CASE NO. 3:14-cv-1802 (VAB) |
| | : | |
| v. | : | |
| | : | |
| C/O JOHNPIERRE, et al., | : | |
|     Defendants. | : | AUGUST 11, 2015 |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff, Robert Chambers, currently incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, has filed a Complaint *pro se* under section 1983 of title 42 of the United States Code. The Court received the Complaint on December 1, 2014, and granted Mr. Chambers's Motion to Proceed *In Forma Pauperis* on December 22, 2014, Order, ECF No. 7. The Defendants are Correctional Officer Johnpierre, Captain James Watson, Administrative Remedies Coordinator Fitzner, then-Deputy Commissioner Scott Semple, Warden Jon Brighthaupt, Deputy Warden Iweka, Deputy Warden Walker, Counselor Supervisor Jennifer Peterson, and Lieutenant Mollins. All Defendants are named in their individual and official capacities. Compl. at Caption, ECF No. 1.

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## I.      Factual Allegations

Mr. Chambers alleges that, on February 26, 2014, he was released from segregation at Cheshire Correctional Institution. Compl. ¶15, ECF No. 1. He was allegedly called to the Admitting and Processing Area to retrieve his property, which had been placed in storage while he was confined in restrictive housing. *Id.* Mr. Chambers alleges that when Defendant Johnpierre handed the plaintiff plastic bags containing his property, he told him that three items had been discarded and explained why. *Id.* ¶16. Defendant Johnpierre allegedly said that a set of headphones were discarded because they did not belong to the Plaintiff, a digital antenna, because it was broken, and an extra photo album cover, because Mr. Chambers had "too many" of them. *Id.* According to the Complaint, Defendant Johnpierre asked the Plaintiff to sign an Inmate Property Status and Receipt form. *Id.*

Mr. Chambers claims that he initially refused to sign the form. *Id.* ¶17. He allegedly told Defendant Johnpierre that he had a receipt for purchase of the headphones, the antenna was

intact when he was sent to restrictive housing and must have been broken by correctional staff, and all photo album covers were attached to photo albums so there could not be an extra cover. *Id.* ¶17.  Mr. Chambers claims that Defendant Johnpierre told him that the items already had been discarded and that if he did not sign the form, he would be returned to restrictive housing. *Id.* ¶18.  Mr. Chambers alleges that "being coerced," he signed the form and asked for an administrative remedy form to file a grievance regarding the taking and destruction of his property.  *Id.* ¶19.  In response to this request, Defendant Johnpierre allegedly discarded twenty-four books from the plaintiff's property, because he had too many.  *Id.* ¶¶20-22.  When Mr. Chambers complained, he claims that Defendant Johnpierre said "[s]o sue me. That's what you do right?" a comment which Mr. Chambers surmised in his Complaint referred to a pending lawsuit he had filed.  *Id.* ¶21.

To avoid returning to restrictive housing, Defendant Johnpierre allegedly had Mr. Chambers sign a second form indicating that he had received his property.  *Id.* ¶22.  Mr. Chambers claims that he then returned to his cell with his property and copies of both signed forms.  *Id.* ¶23.  Upon examining his property, Mr. Chambers alleges that he realized that many photographs had been discarded, including photographs of his deceased grandparents.  *Id*.  According to the Complaint, when Mr. Chambers complained about his missing property to the Unit Manager, he was told to contact the property officer.  *Id.* ¶24.

Mr. Chambers alleges that he spoke and wrote to Defendant Watson about his property issues but received no response.  *Id.* ¶¶26-27.  When Defendants Deputy Wardens Iweka and Walker toured the housing unit, Mr. Chambers allegedly spoke to them about the so-called "retaliation" described above, the destruction of his property and Defendant Watson's failure to

3

respond to his concerns. *Id.* ¶ 28. Mr. Chambers claims that Defendant Walker asked whether he could obtain replacement photographs from his mother and Defendant Iweka told him to write to Defendant Watson again. *Id.*

On March 10, 2014, Mr. Chambers claims that Defendant then-Deputy Commissioner Semple responded to a letter Mr. Chambers had written complaining about Defendant Fitzner's practice of returning grievances without disposition and otherwise preventing him from using the grievance process. *Id.* ¶25. Defendant Semple allegedly indicated that Mr. Chambers had not provided evidence that he had "exhausted the chain of command" before writing to the Commissioner's Office. *Id.* Mr. Chambers claims that Defendant Semple forwarded a copy of Mr. Chambers's letter to Defendant Warden Brighthaupt. *Id.*

On April 8, 2014, because Mr. Chambers alleges that he had not received any response from Defendant Watson, he filed a grievance regarding his property. *Id.* ¶29. While Mr. Chambers was waiting for a response to his grievance, he claims that Defendant Brighthaupt approached him several times during recreation. *Id.* ¶30. He alleges that Defendant Brighthaupt called him a name he used while he was an active gang member and asked him about other gang members, giving inmates the impression that Mr. Chambers was an informant. *Id.* Mr. Chambers alleges that he had renounced his gang affiliation and had no information concerning criminal or gang activity. *Id.*

Also during this time, Mr. Chambers claims that Defendant Mollins and his subordinates in the Intelligence Unit searched his cell numerous times, which he claims amounted to harrassment. *Id.* ¶31. He alleges that Defendant Mollins also addressed him by his gang name and made comments such as "what's poppin" and "You really don't like crabs?" *Id.*

4

During this time, Mr. Chambers's cousins were allegedly removed from his visiting list, and Defendant Peterson refused to restore them to the visiting list. *Id.* ¶33.

On July 8, 2014, Mr. Chambers filed a grievance appeal, construing the lack of response from Defendant Watson as a denial of the initial grievance. *Id.* ¶32. Mr. Chambers alleges that he wrote to Defendant Iweka on August 1, 2014, complaining about the lack of response to his grievances and harassment by Defendant Mollins and the Intelligence Unit. *Id.* ¶34.

Mr. Chambers claims that, on August 8, 2014, he was transferred from Cheshire Correctional Institution to Corrigan-Radgowski Correctional Center and that there was no information in the DOC computer system to explain why the transfer occurred. *Id.* ¶¶35-36. He alleges that he was aggrieved by the transfer because Corrigan has "less programming and job opportunities" and his sick mother had difficulty visiting him there. *Id.* ¶¶35-36, 47. He alleges that on September 11, 2014, he returned to Cheshire Correctional Institution. *Id.* ¶37.

Mr. Chambers claims that he received his property after the transfer on September 12, 2014 and noticed that all of his photographs and personal mail was missing. *Id.* ¶¶38-39. He claims that he informed the block officer, who said that the Intelligence Unit was looking through his pictures and reading his personal mail to look for signs of gang activity and that he would receive the items when they were finished. *Id.* ¶¶39-40.

Mr. Chambers alleges that on September 13, 2014, he realized that all of the legal documents pertaining to a pending civil rights action and some letters pertaining to a state habeas matter were missing. *Id.* ¶41. He claims that all of the documents were in envelopes clearly marked as legal mail, privileged mail, attorney-client correspondence, or with some other similar label. *Id.* Mr. Chambers also claims that he wrote an inmate request demanding the return of his

5

legal materials and threatened legal action if the materials were not returned.  *Id.* ¶42.

Mr. Chambers alleges that on September 17, 2014, he was called to the Admitting and Processing Area to retrieve his photographs, personal correspondence and legal materials.  *Id.* ¶43.  When he returned to his cell, Mr. Chambers claims that he was instructed to pack his property for a transfer back to Corrigan-Radgowski Correctional Center.  *Id.* ¶44.  The officers at Corrigan-Radgowski Correctional Center told the plaintiff that there was nothing in his records to explain either transfer.  *Id.* ¶46.

## II.     Legal Analysis

Mr. Chambers asserts the following claims:  (1) Defendant Johnpierre retaliated against him for filing a lawsuit by discarding and destroying his personal property, *id.* ¶49; (2) Defendant Fitzner retaliated against him when she interfered with his First Amendment right to file grievances, *id.* ¶50; (3) Defendants Semple, Brighthaupt, Iweka, Walker, Peterson and Watson, all supervisory officials, were deliberately indifferent to the violations of Mr. Chambers's rights by failing to act on information that unconstitutional acts were occurring and creating a policy or custom which allowed the continuance of such practices, *id.* ¶51-53; (4) Defendant Peterson retaliated against him for filing grievances by refusing to restore his relatives to his visiting list, *id.* ¶54; (5) Defendants Mollins and Peterson violated Mr. Chambers's First, Fourth, and Fourteenth Amendment rights by confiscating and reading his legal correspondence, *id.* ¶55; and (6) Defendants Brighthaupt, Iweka, Walker and Peterson retaliated against him for filing grievances by transferring him to another prison, *id.* ¶56.

He seeks a declaratory judgment stating that all of the Defendants violated his constitutional rights.  *Id.* at Relief Requested ¶A1-3.  He also seeks an injunction ordering

6

Defendants to arrange for his transfer back to Cheshire Correctional Institution and to change the policies regarding the way that grievances and property of inmates in Restrictive Housing are handled. *Id.* at Relief Requested ¶B1-3. Finally, he seeks damages from each Defendant for alleged violations of his constitutional rights. *Id.* at Relief Requested ¶C.

### A.     Official Capacity Claims

Mr. Chambers does not specify in which capacity he seeks damages against the Defendants. The Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (absent a waiver or valid congressional override, the Eleventh Amendment bars a damages action in federal court against a state or state official acting in his official capacity) (citations omitted). Section 1983 does not abrogate state's sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). As this Court lacks subject matter jurisdiction over any claims for money damages against the Defendants in their official capacity, these claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). The other claims involving requests for injunctive and declaratory relief as well as damages against Defendants in their individual capacities will proceed in the manner specified below in this opinion.

### B.     Injunctive Relief

Mr. Chambers seeks an injunction to effect his transfer back to Cheshire Correctional Institution. With respect to the transfer, Mr. Chambers does not articulate a cognizable legal basis for the Court to transfer him to a different facility in Connecticut. Prisoners have no constitutional right to be placed in or transferred to a particular facility. *See Montanye v.*

*Haymes*, 427 U.S. 236, 243 (1976); *Sher v. Coughlin,* 739 F.2d 77, 80 (2d Cir. 1984).  Mr. Chambers alleges that he is dissatisfied with Corrigan because it has fewer prison programs and is far from his family members, including his ill mother.  The DOC has the discretion to determine where to house inmates, taking into account a variety of needs including security and needs of the inmate population.  Conn. Gen. Stat. §18-86 (Commissioner has discretion to transfer inmate to any correctional facility when "the best interest of the inmate or the other inmates will be served").  Because Mr. Chambers has not alleged that his confinement at Corrigan violates his constitutional rights, the Court must dismiss this claim for injunctive relief under 28 U.S.C. § 1915A(b)(1).

He also seeks an injunction changing the policies regarding the way that inmate grievances and property are treated.  At this time, the Court will allow the claim to go forward, but to survive a motion for summary judgment, Mr. Chambers must present evidence of specific policies that resulted in unconstitutional behavior.

### C. **Retaliation Claims**

Prison officials may not retaliate against inmates for exercising their constitutional rights. To state a claim of retaliation, Mr. Chambers must allege facts in support of the following elements: (1) that he was engaged in constitutionally protected conduct or speech, (2) that the prison officials took adverse action against him, and (3) that a causal connection existed between the protected speech or conduct and the adverse action.  *See Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003).  To meet the third element, Mr. Chambers must allege that the protected conduct or speech "was a substantial or motivating factor for the adverse actions taken by prison officials," or in essence that they were motivated substantially by retaliation.  *Bennett v. Goord,*

343 F.3d 133, 137 (2d Cir. 2003) (citation omitted); *see also Dorsey v. Fisher,* 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted).  Because of the potential for abuse and the "ease with which claims of retaliation may be fabricated," claims by prisoners of retaliation must be examined with "skepticism and particular care." *Johnson v. Eggersdorf*, 8 F. App'x 140, at 144 (2d Cir. 2001) (internal quotation marks omitted) (quoting Colon *v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995)).

With respect to Defendant Johnpierre, Mr. Chambers has alleged that he destroyed his property for arbitrary reasons and that he referred to Mr. Chambers's currently pending lawsuit while he did so.  "The unauthorized destruction of prisoner's property can form the basis for a retaliation claim."  *See Jones v. Harris,* 665 F. Supp.2d 384, 399 (S.D.N.Y.) (citations omitted).  Mr. Chambers also has raised a "colorable suspicion" that Defendant Johnpierre acted with a retaliatory motive, because he alleges that he referred to a lawsuit filed by Mr. Chambers while he was destroying his property.  *See Johnson,* 8 F. App'x at 144 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (noting that complaints which give rise to a "colorable suspicion of retaliation" will support documentary discovery), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).  Thus, the claim against Defendant Johnpierre, claim number one from the list above, will go forward at this time.

Regarding Defendant Fitzner, Mr. Chambers has alleged that Fitzner returned his grievances and engaged in other activities to prevent him from filing them.  In particular, he claims that Defendant Fitzner warned staff that Mr. Chambers attempted to file grievances and "ben[t] Administrative Directive 9.6 to her will."  Compl. ¶24, ECF No. 1.  Filing grievances is a protected activity that can form the basis for a retaliation claim.  *Johnson,* 8 F. App'x at 144 ("It

9

is undisputed that retaliation against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.") (citing *Graham v. R.J. Henderson,* 89 F.3d 75 (2d Cir. 1996)).  However, Mr. Chambers has failed to allege that Defendant Fitzner was motivated by retaliatory intent or how informing staff that Mr. Chambers filed grievances was an "adverse action" intended to prevent him from filing grievances.  Moreover, the allegation that Defendant Fitzner "ben[t] Administrative Directive 9.6 to her will" is too vague to state a cause of action for retaliation.  Even reading the Complaint generously, as the Court must in evaluating a *pro se* pleading, Mr. Chambers has failed to provide the Defendant with sufficient notice of what he claims the offending conduct to be.  *See Johnson*, 8 F. App'x at 144 (noting that a complaint which alleges retaliation in "wholly conclusory terms may be dismissed on the pleadings alone.")  Thus, the retaliation claim against Defendant Fitzner is dismissed under 28 U.S.C. § 1915A(b)(1).

Mr. Chambers alleged that Defendant Peterson kept his cousins off the visitor list.  "Most courts hold that 'contact visits or prison inmates are a privilege for inmates, not a right, and thus do not give rise to a liberty interest by the due process clause… because [a]n inmate does not retain rights inconsistent with proper incarceration and freedom of association is among the rights least compatible with incarceration." *Mateo v. Heath,* No. 11 Civ. 636(LAP), 2012 WL 1075836, at *3 (S.D.N.Y. Mar. 29, 2012) (citations and internal quotation marks omitted).  While pleading a violation of a constitutional right is not necessary to allege a retaliation claim, a plaintiff must plead an adverse action that would deter a person of ordinary firmness from engaging in a protected activity.  *Id.* at *3-4 (finding that a one-time denial of visitation was insufficient to state a retaliation claim).  Depending on the circumstances under which Defendant

Peterson kept Mr. Chambers off the visitor's list, these facts may state a valid retaliation claim.

However, Mr. Chambers's retaliation claim against Defendant Peterson fails because he has not pled a causal connection between Defendant Peterson's action and a protected activity. *See Benitez v. Parmer,* Civil Action No. 9:12-CV-0448 (GTS/DEP), 2013 WL 5310245, at *8-9 (N.D.N.Y. July 8, 2013) (dismissing a retaliation claim on a motion to dismiss because it only contained "conclusory" allegations of a causal link between the protected activity and the actions of the defendants), *Report and Recommendation adopted by* 2013 WL 5310220 (N.D.N.Y. Sept. 20, 2013). He has not pled that Defendant Peterson was aware of any grievance he filed. Thus, the claim against Defendant Peterson is dismissed under 28 U.S.C. § 1915A(b)(1).

Mr. Chambers alleges that he was transferred by Defendants Brighthaupt, Iweka Walker and Peterson in retaliation for filing grievances. While inmates do not have a constitutional right to choose their housing, transferring inmates in retaliation for engaging a protected activity or speech can form the basis for a retaliation claim. *See Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir, 1998) (citations omitted). As with the claim discussed above, Mr. Chambers has failed to allege that Defendant Peterson knew about the grievances or had any reason to retaliate against him because he engaged in protected activity. Thus, the claim against Defendant Peterson must be dismissed at this time under 28 U.S.C. § 1915A(b)(1). Mr. Chambers has plausibly alleged that Defendants Brighthaupt, Iweka, and Walker were aware of grievances he filed. Construing the *pro se* Complaint liberally, the Court will allow the retaliation claims to proceed against them at this time. However, to prevail against a summary judgment motion, Mr. Chambers must present evidence that their actions were substantially motivated by improper retaliation and that they were personally involved in the decision to transfer him.

## D. <u>Failure to Protect Claim</u>

Mr. Chambers alleges that Defendants Semple, Brighthaupt, Iweka, Walker, Peterson and Watson were supervisory individuals and were deliberately indifferent to violations of Mr. Chambers's constitutional rights. "An Eighth Amendment failure to protect claim requires an inmate to show that prison officials acted with deliberate indifference in failing to protect the inmate from harm." *Bridgewater v. Taylor*, 698 F.Supp.2d 351, 357 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). To state a plausible failure to protect claim, Mr. Chambers must allege that the deprivation caused was "sufficiently serious" and that the prison official acted with a sufficiently culpable state of mind akin to recklessness. *Id.* at 357-58 ("the prison official must have know[n] of and disregard[ed] an excessive risk to inmate health or safety") (citation and internal quotation marks omitted) (alterations in original).

To the extent that Mr. Chambers alleges that Defendant Brighthaupt failed to protect him from harm by essentially calling him an informant in front of the other inmates, that claim is dismissed. To sustain a claim of failure to protect based on comments indicating that an inmate is an informant, the inmate must allege that he faced "actual or imminent harm." *See Hamilton v. Fischer,* No. 6:12-CV-6449(MAT), 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013) (dismissing a failure to protect claim based on allegations that a defendant exposed him as an informant, because there was no indication that plaintiff ever faced harm or risk of harm). Mr. Chambers has failed to allege any facts indicating he faced "actual or imminent harm." Accordingly, this claim against Defendant Brighthaupt is dismissed under 28 U.S.C. § 1915A(b)(1).

The only allegation Mr. Chambers makes involving Mr. Semple is that he responded to a

letter Mr. Chambers wrote about Defendant Fitzner's handling of his grievances.  Because the Court dismissed the claims against Defendant Fitzner, it also dismisses the failure to protect claim against Defendant Semple under 28 U.S.C. § 1915A(b)(1).  *See Abascal v. Fleckenstein,* No. 06-CV-349S, 2008 WL 3286353, at *9 (W.D.N.Y. Aug, 7, 2008) (dismissing a failure to protect claim based on the denial of grievances because plaintiff failed to show how the denial of grievances violated a constitutional right).

Mr. Chambers also alleges that a number of retaliatory acts were taken against him, namely that his property was destroyed, he was transferred to different prison facility, and that he was denied the ability to visit with certain members of his family.  The Court will dismiss the claim of failure to protect against the denial of visits with members of his family, because for the reasons discussed above, Mr. Chambers has failed to show how Defendant Peterson violated his constitutional rights.  *See id.* at *9.  Because Mr. Chambers has alleged facts that indicate his constitutional rights may have been violated with respect to the destruction of his property and his transfer to a different prison facility in retaliation for the filing of grievances, the Court will allow these claims to go forward at this time.  However, to prevail against a summary judgment motion, Mr. Chambers must submit evidence showing that these incidents placed him at a significant risk of actual or imminent harm under the Eighth Amendment and that the Defendants were subjectively aware of that risk.  *See Doe v. Whidden,* 557 F. App'x 71, 72 (2d Cir. 2014) (affirming the grant of summary judgment in defendant's favor on a failure to protect claim because plaintiff did not adduce evidence that his placement in harm's way was attributable to reckless or knowing conduct).

### E.     Claim of Improper Confiscation of Materials

Mr. Chambers alleges that Defendant Mollins and Peterson violated the First, Fourth and Fourteenth Amendments by confiscating and reading his legal documents and correspondence with his attorney. "There are numerous cases holding that… allegations regarding intentional confiscation or destruction of a prisoner's property without justification or explanation state a 1983 claim, [a]nd there are also cases protecting a prisoner's right to access to the courts and to privacy in legal correspondence." *Abascal,* 2008 WL 3286353, at *7 (internal quotation marks omitted) (alterations in original) (quoting *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983)). Mr. Chambers does allege that the Defendants provided a reason for confiscating and reading some of his documents – searching for gang-related activity. However, construing the Complaint liberally, the Court finds that Mr. Chambers has stated a claim against Defendant Mollins that he improperly confiscated and read his legal correspondence. *See id.* However, the Complaint does not contain any allegations that Defendant Peterson was involved in any way with the reading or confiscation of Mr. Chambers's legal documents. Accordingly, the claim against her is dismissed under 28 U.S.C. § 1915A(b)(1).

### F.     Declaratory Relief

Mr. Chambers seeks a declaration from the Court that all of the Defendants violated his constitutional rights. This claim will go forward only as to the Defendants and claims that were not dismissed above in this opinion.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     All claims for damages against the defendants in their official capacities are

dismissed under 28 U.S.C. § 1915A(b)(2).  The Court also dismisses Mr. Chambers's request for injunctive relief transferring him to another prison facility under 28 U.S.C. § 1915A(b)(1).  The Court will allow the request for declaratory relief to continue as this time but only with respect to the claims for damages set out below that are not dismissed in this Order.

With respect to Mr. Chambers's claims for damages against the Defendants in their individual capacities, the Court dismisses the failure to protect claims regarding Defendant Brighthaupt insinuating in front of other inmates that Mr. Chambers was an informant, those regarding Defendant Peterson keeping some of his family members off the visitors' list, and those regarding Defendant Semple's response to Mr. Chambers's complaints about Defendant Fitzner, all under 28 U.S.C. § 1915A(b)(1).  The Court also dismisses the retaliation claims against Defendant Fitzner regarding his handling of grievances and against Defendant Peterson regarding the visitors' list under 28 U.S.C. § 1915A(b)(1).  Finally, the Court dismisses the claim regarding the confiscation of Mr. Chambers privileged legal documents against Defendant Peterson under 28 U.S.C. § 1915A(b)(1).  Because the Court has dismissed all claims asserted against Defendants Fitzner, Peterson, and Semple, they are all dismissed as Defendants from this action.

The remaining claims will proceed against all other Defendants at this time.  For Mr. Chambers's reference, these claims include (a) the retaliation claim against Defendant Johnpierre regarding the destruction of Mr. Chambers's property; (b) the retaliation claim regarding the transfer of Mr. Chambers to a different facility against Defendants Brighthaupt, Iweka, and Walker; (c) the failure to protect claims regarding the destruction of Mr. Chambers's property and the allegedly retaliatory transfer against Defendants Brighthaupt, Walker, Iweka, and

Watson; and (d) the claims of improper confiscation and reading of privileged legal materials against Defendant Mollins.

(2) The Clerk shall verify the current work address of each remaining Defendant with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the Court on the status of that waiver request on the thirty-fifth (35) day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to serve the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this Order and to file a return of service within thirty (30) days from the date of this Order.

(4) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

16

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this Order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within eight months (240 days) from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The Plaintiff must give notice of a new address even if he is incarcerated. The Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The Plaintiff should also notify the Defendants or the attorney for the Defendants of his new address.

**SO ORDERED** this 11th day of August 2015 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

17