UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT CHAMBERS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:14cv1802(VAB) |
| C/O JOHNPIERRE, ET AL.,<br>    Defendants. | :<br>:<br>: |

**RULING ON DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Robert Chambers, is currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut ("Cheshire") and filed this action against Deputy Commissioner Scott Semple, Warden Jon Brighthaupt, Deputy Wardens Iweka and Walker, Correctional Officers Johnpiere[1] and Watson, Counselor Supervisor Peterson, Lieutenant Mollin[2] and Administrative Remedies Coordinator Fitzner.

On August 11, 2015, the Court dismissed Chamberes' claim for injunctive relief regarding the conditions of his confinement at Corrigan Correctional Institution, the official capacity claims for money damages, the failure to protect claim against defendant Brighthaupt in his individual capacity, and all claims against defendants Peterson, Semple and Fitzner in their individual capacities. *See* Initial Review Or. at 14-15, ECF No. 11. The Court concluded that Chambers' official capacity claim seeking injunctive relief regarding policies governing

---

[1] The plaintiff incorrectly refers to defendant Johnpiere as Johnpierre in the complaint. *See* Defs.'s Mem. Supp. Mot. Summ. J., Ex. G, Johnpiere Affidavit.

[2] The plaintiff incorrectly refers to defendant Mollin as defendant Mollins in the complaint. It is apparent from the printed name of defendant Mollin on the Waiver of Service of Summons form and defendant Mollin's signature on his affidavit in support of the motion for summary judgment that the spelling of his last name is Mollin, and not Molin. *See* Waiver of Service of Summons; Defs.'s Mem. Supp. Mot. Summ. J., Ex. H, Mollin Affidavit, Doc. No. 22-9.

grievances and property claims and the request for declaratory relief against defendants would proceed against defendants Brighthaupt, Walker, Iweka, Watson, Mollin, and Johnpiere.  *See id.* at 8, 15.  In addition, the following individual capacity claims would proceed: (a) the retaliation claim against defendant Johnpiere regarding the destruction of Mr. Chambers's property; (b) the retaliation claim regarding the transfer of Mr. Chambers to a different facility against defendants Brighthaupt, Iweka, and Walker; (c) the failure to protect claims regarding the destruction of Mr. Chambers's property and the allegedly retaliatory transfer against defendants Brighthaupt, Walker, Iweka, and Watson, and (d) the claims of improper confiscation and reading of privileged legal materials against defendant Mollins.  *Id.* at 15-16.

Defendants have moved for summary judgment on all claims.  For the reasons that follow, defendants' motion is GRANTED.

## I. Factual Allegations[3]

In January 2010, Mr. Chambers arrived at Cheshire.  In April 2013, he filed a civil rights action against seven employees of the Department of Correction, including a deputy warden from Cheshire.  *See Chambers v. Ruiz, et al.*, Case No. 3:13cv565 (AWT) (Complaint filed on April 19, 2013; judgment for defendants entered on July 9, 2015), ECF No. 22-10.  None of the defendants in that action are defendants in this action.

On February 19, 2014, correctional officials at Cheshire transferred Mr. Chambers to the restrictive housing unit ("RHU").  On that date, Officer Barriault was the Property Officer at the RHU.  Defs.' L. R. 56(a) Stmt. ¶19, ECF No. 22-11.  He inventoried Mr. Chambers's personal property and completed an Inmate Property Status and Receipt form indicating that he planned to

discard Chambers's Koss headphones because he did not believe that they belonged to him, that he planned to discard Chambers's digital antenna because it was broken, and that he planned to discard Chambers's photo album cover because it was in excess of the number of photo album covers that an inmate was permitted to possess. Barriault Aff. ¶6, ECF No. 22-7 (Ex. F). On February 26, 2014, Mr. Chambers allegedly signed the Inmate Property Status and Receipt form completed by Officer Barriault regarding the destruction of his three property items. *Id.* at ¶7.

On February 26, 2014, prison officials released Mr. Chambers from the RHU. Later that day, Mr. Chambers visited the property room to collect his personal property items. Pl.'s Aff. ¶14-15, ECF No. 23-1 (Ex. A). Officer Johnpiere was working in the property room and informed Mr. Chambers about the three items that had already been discarded by Officer Barriault. Officer Johnpiere told Mr. Chambers that he had too many non-legal books and that any books in excess of the number permitted by the Department of Correction would be discarded. *Id.* at ¶¶22-25. Officer Johnpiere completed an Inmate Property Status and Receipt Form indicating that miscellaneous books possessed by the plaintiff had been discarded as excess items. The plaintiff signed this form, allegedly because Officer Johnpiere threatened to return him to the RHU if he did not. *Id.* at ¶¶19-20.

On March 2, 2014, Mr. Chambers sent an Inmate Request to Counselor Supervisor Garcia about the incident involving the destruction of his personal property by Officer Johnpiere on February 26, 2014. Pl.'s Aff. ¶31. He informed Counselor Supervisor Garcia that he felt Officer Johnpiere had destroyed his property in retaliation for his 2014 lawsuit against correctional officials. *Id.* On March 4, 2014, Supervisor Garcia responded to Mr. Chambers's

---

[3] The relevant facts are taken from defendants' Local Rule 56(a)1 Statement and Exhibits attached to the Local Rule 56(a)1 Statement [Docs. Nos. 22-2 through 22-11] and the plaintiff's Local Rule 56(a)2 Statement [Doc. No. 24]

3

request and suggested that he write to the property office regarding his claim. *Id.* at ¶32. Mr. Chambers allegedly made written and verbal complaints to defendants Iweka and Walker about the retaliatory destruction of his property. *Id.* at 41-42. However, Mr. Chambers did not file a claim with Cheshire's Lost Property Board. *See* Defs.' L. R. 56(a) Stmt. ¶7. *See also* Rivera Aff. ¶¶ 4-6, ECF No. 22-4 (Ex. C).

On August 1, 2014, Counselor Supervisor Garcia submitted a request to the Office of Population and Management to transfer Mr. Chambers from Cheshire to another prison facility, allegedly because he "had been incarcerated at Cheshire for an extended period of time" and risked becoming "too comfortable with other inmates at the facility." Garcia Aff. ¶¶4-5, ECF No. 22-5 (Ex. D). On August 8, 2014, prison officials at Cheshire transferred Mr. Chambers to Corrigan-Radgowski Correctional Institution ("Corrigan"). On September 11, 2014, Counselor Hannon, an employee at Corrigan Correctional Center, allegedly requested that Mr. Chambers be transferred the back to Cheshire. Defs.' L. R. 56(a) Stmt. ¶16. *See also* Vazquez Affidavit, ¶¶7-10, ECF No. 22-6 (Ex. E). On September 17, 2014, prison officials at Cheshire transferred Mr. Chambers back to Corrigan, allegedly at the request of Population Management Counselor John Creamp. *Id.* at ¶17.

Mr. Chambers allegedly wrote a written complaint to "Administration/Intelligence" about the confiscation of his privileged mail. Pl.'s Aff. ¶¶50-53. He does not allege that he filed a grievance regarding either transfer to Corrigan or his brief transfer back to Cheshire. He also does not claim to have submitted a grievance regarding the conduct of defendant Mollin, who allegedly confiscated and read his legal papers upon his transfer back to Cheshire on September 11, 2014.

---

and Affidavit and attached Exhibits [Doc. No. 23-1]. *See* D. Conn. L. Civ. R. 56(a).

1.  **Grievances Procedures in the Connecticut Department of Correction**

An inmate at a Connecticut Department of Correction facility who wishes to file a grievance must follow the procedure established in Connecticut Department of Correction Administrative Directive 9.6 ("Directive").  *See* Administrative Directive 9.6, ECF No. 22-2 (Ex. A), Conn. Dep't of Corr. Admin. Directive 9.6, effective August 15, 2013).[4]  Under the Directive, full administrative review generally occurs in three steps.  First, an inmate must seek to resolve his or her complaint informally by depositing an Inmate Request Form (CN 9601) in a designated collection box.  If the inmate is dissatisfied with the response to his or her Inmate Request Form or does not receive a response within fifteen days, the inmate may proceed to the second step, which is termed "Level One Review."  To initiate Level One Review, an inmate completes the Inmate Administrative Remedy Form (CN 9602).  At this point, the inmate is required to provide evidence that he or she attempted to informally resolve his or her grievance by attaching the Inmate Request Form (CN 9601) to CN 9602.  *Id.* at 9.6(6)(C). The inmate also has the option of submitting CN 9602 without attaching CN 9601 and providing a "valid reason" why he or she could not obtain the form.  *Id.*  In the Administrative Directive, the Department of Correction indicates that not receiving a "timely response" to an inmate request would be a "valid reason" for not attaching the CN 9601 form.  *Id.*  Level One Review is undertaken by the Unit Administrator, who must respond to the grievance in writing within thirty days. *Id.* at 8. An

---

[4] The Court notes that page five of Administrative Directive 9.6 is missing from the copy of the directive submitted by defendants in support of their motion for summary judgment.  The court takes judicial notice of page five of Administrative Directive 9.6 which appears on the Department of Correction's website.  *See* www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf.  The Court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website. *See Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7, n.2 (D. Conn. Sept. 19, 2003) (citation omitted) (taking judicial notice of the Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities.").  *See also Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013)

inmate may proceed to the third step, Level Two Review, if he or she disagrees with the Unit Administrator's judgment or does not receive a timely response. *Id.* Generally, Level Two Review takes place before a District Administrator and is the final stage of appeal. Level Three appeals are restricted to challenges to department policy or the integrity of the grievance procedure, or to appeals of Level Two grievances to which the District Administrator has failed to respond in a timely manner. *See id.* at 9.6(6)(L).

### 2. Special Grievance Procedures for Lost Property

Administrative Directive 9.6(16) sets forth a specific procedure that inmates must follow when filing a claim for reimbursement of lost or damaged personal property. *See* Directive at 9.6(16). The Department of Correction's Lost Property Board hears and determines property claims that involve compensation not exceeding $3,500.00. *Id.* An inmate must attempt to resolve the property claim informally before filing a Lost/Damaged Property Investigation Form with the Administrative Remedies Coordinator. *See Id.* at 9.6(16)(B)(1). Additionally, a property claim must be filed within one year of the date that the inmate knows or should have known that his or her property was lost or damaged. *Id.* at 9.6(16). If the property claim is not resolved at the investigative level, the inmate may complete and submit a property claim form to the Lost Property Board in Wethersfield, Connecticut. *See Id.* at 9.6(16)(B)(1) & (2). The Lost Property Board may hold a hearing to determine whether the Department of Correction is liable for the loss of property and the amount of damages owed to the inmate. *See Id.* at 9.6(16)(E).

### 3. Plaintiff's Prior Grievances

Mr. Chambers made use of Cheshire's grievance procedure twice in 2014, both times regarding incidents that are not at issue in this case. Correctional Treatment Officer Rious avers

---

(citations omitted) ("The Court generally has the discretion to take judicial notice of [I]nternet material").

that she investigated whether Mr. Chambers had filed any grievances in 2014 and found that Mr. Chambers had only filed two grievances: one dated March 18, 2014 and another dated March 20, 2014.  Rious Aff. ¶¶ 3-7 & Attachs.. ECF No. 22-3 (Ex. B).  Allegedly, these experiences with the grievance process made clear to Mr. Chambers that officials at the Department of Correction would "make it virtually impossible for [him] to complete the grievance procedure" regarding the alleged injuries at issue in this case.  Pl.'s Br. at 17.

At some point before March 5, 2014, Mr. Chambers sent a letter to Deputy Commissioner Scott Semple complaining about the excessive sanctions that he had received under a disciplinary report that had been issued to him in February 2014, the abuses of Administrative Remedy Coordinator Fitzner, and alleged improper conduct by Captain Watson during inmate strip searches.  Pl.'s Aff. ¶¶30-35.  On March 10, 2014, Deputy Commissioner Scott Semple responded to Mr. Chambers's letter and noted that he had not provided evidence that he had exhausted the chain of command in order to resolve his issues.  *Id*. at ¶36.  Deputy Commissioner Semple directed Mr. Chambers to the Administrative Directives governing available administrative remedies.  Semple Letter, ECF No. 23-1 (Ex. C).

On March 18, 2014, Mr. Chambers filed an administrative grievance regarding the disciplinary report he had received for possession of sexually explicit materials and the sanctions that had been imposed under the finding of guilt as to the disciplinary charge.  Pl.'s Aff. at ¶37; *see also* Rious Aff. Attach. 2.  He complained that the sanctions were excessive and asked that the sanctions be reduced.  In the grievance form, Mr. Chambers also stated that he had not received a timely response to written requests he had written to prison officials while in the RHU.  Pl.'s Aff. ¶38.  On March 25, 2014, Administrative Remedies Coordinator Fitzner

7

returned Mr. Chambers's grievance "without disposition" because he had allegedly not attempted to informally resolve the issue and had not attempted to appeal the disciplinary sanctions in a timely manner in accordance with the procedures set forth in the administrative directives. Rious Aff. Attach. 2.

On March 20, 2014, Mr. Chambers filed an administrative grievance regarding Cheshire's response to requests that he made for his legal materials and a legal telephone call during his confinement in the RHU in February 2014. He complained that correctional staff did not provide him with a legal telephone call or return his legal materials until after his release from the RHU. In the grievance form, Mr. Chambers also stated that he had not received a timely response to written requests he had written to prison officials while in the RHU. Pl.'s Aff. ¶38; *see also* CN 9602 (March 20, 2014), ECF No. 23-1 (Ex. I). He asked that a policy be implemented to protect him and other inmates from this same type of denial of access to courts in the future. On March 25, 2014, Administrative Remedies Coordinator Fitzner returned Mr. Chambers's grievance without disposition because he had not provided the CN9601 form as "supporting documentation you [sic] have tried to resolve this issue via the chain of command." Rious Aff., Attach. 3; *see also* CN 9602 (March 20, 2014).

## II. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that no genuine issues of material fact remain in dispute and that it is "entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and demonstrates "the absence of a genuine issue of material fact," the party opposing the motion "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citations omitted). In doing so, the non-moving party may not merely rely on "conclusory allegations or unsubstantiated speculation." *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is inappropriate. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict").

Where one party is proceeding *pro se*, the court reads that party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal citations omitted). Yet even a *pro se* plaintiff cannot defeat a motion for summary judgment by relying solely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996).

### III. Discussion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). The

PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 738 (2001). Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants have the burden of proving that Mr. Chambers has not exhausted claims prior to filing this action. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing … that a grievance process exists and applies to the underlying dispute) (internal citations omitted).

The PLRA requires "proper exhaustion," which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In other words, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83-84).

In *Ross v. Blake*, __U.S.__, 136 S. Ct. 1850 (2016), the Supreme Court rejected the judicially created special exceptions to the exhaustion requirement of the PLRA. *See id.* at __, 136 S. Ct. at 1362 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement"). The Court concluded that the PLRA includes a single "textual exception"—that an inmate need not exhaust remedies that are not "available" to him or her. *Id.* at 1858. The Supreme Court described three scenarios in which administrative procedures that have been officially adopted by a prison facility can be unavailable to an inmate.

*Id.* at 1859.  First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, a remedy might be "so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it [or] make sense of what it demands."  *Id.* (citations omitted).  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.

Administrative Directive 9.6(4)(A) states that all matters subject to the Commissioner's authority for which another remedy is not provided in subsections (B) through (I) are grievable using the Inmate Grievance Procedure outlined in Section 6 of the Directive.  *See* Defs.'s Mem. Supp. Mot. Summ. J., Ex. A, Directive 9.6.  Mr. Chambers's claims of retaliation, interference with legal papers and letters, and failure to protect are matters that could be addressed by the Inmate Grievance Procedure.  *See Id.*  His property claim is covered by Administrative Directive 9.6(4)(K) and (16).  *See Id.*  Thus, administrative remedies were procedurally available to the plaintiff regarding all of his claims.

In his brief in opposition to defendants' Motion for Summary Judgment, plaintiff acknowledges that he was aware of the administrative grievance processes described above but argues that prison officials made it "virtually impossible … to complete the grievance procedure." Pl.'s Br. at 17.  In *Ross*, the Supreme Court held that an administrative procedure would be unavailable if officers were "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.  In *Barksdale*, a district court rejected the contention that a prison's administrative procedure was unavailable when the plaintiff cited flaws in the

11

processing of several grievances filed by other inmates, finding this evidence "insufficient to establish a pattern of systematic delays." *Barksdale v. Annucci*, No. 15-0560, 2016 U.S. Dist. LEXIS 103331 at *8 (N.D.N.Y. Aug. 3, 2016); *see also Mena v. City of N.Y.*, No. 13-2430 (RJS), 2016 U.S. Dist. LEXIS 94188, at *13 (S.D.N.Y. July 19, 2016) (holding that fact that a plaintiff's initial grievance received no response was "insufficient" to show that a grievance procedure amounted to a "dead end"). As Mr. Chambers explains, Administrative Remedies Coordinator Fitzner returned his 2014 grievances "without disposition" despite the fact that Mr. Chambers had complied with the Administrative Directive by alleging in each grievance form that he had not received a timely response to his CN 9601 form. While Fitzner's treatment of Mr. Chambers's 2014 grievances departed from the administrative rules, this treatment alone is not enough for a reasonable jury to conclude that the administrative procedure was so systemically flawed that it amounted to a "dead end." As a result, Mr. Chambers cannot show that the Department of Correction's grievance procedures were unavailable to him with regard to his claims. He cannot benefit from *Ross*'s sole exception to the PLRA's administrative exhaustion requirement.

Given that Cheshire's administrative grievance system was "available," Mr. Chambers must allege that he exhausted the procedure—and took advantage of the system's appeals process—to survive a motion for summary judgment. Courts require that inmates take advantage of an appeal procedure even when prison officials did not respond to the initial grievance that is being appealed. *See, e.g. Williams v. Hupkowicz*, No. 04-0051, 2007 U.S. Dist. LEXIS 103061, 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the

12

inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.").

Mr. Chambers has not provided sufficient evidence to suggest that he filed initial grievances about the claims at issue in this complaint. He also does not sufficiently suggest that he took advantage of the appeals process with regards to the grievances that he allegedly filed. Mr. Chambers argues that, in the time period before his transfer to Corrigan in August 2014, he filed grievances but did not receive responses to the grievances. *See* Pl.'s Aff. ¶44. He claims that he filed Level Two appeals after the time for responses to these Level One grievances had elapsed. *See Id.* Mr. Chambers, however, has submitted no evidence of these Level One grievances or Level Two grievance appeals. Nor does he indicate whether he received responses to his Level Two appeals or whether he filed Level Three appeals after the time for a response to the Level Two appeals had elapsed.

Mr. Chambers's unsupported statements that he filed grievances and grievance appeals before his transfer to Corrigan in August 2014 do not create an issue of fact with regard to the exhaustion of his claims. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment[,] nonmoving parties … may not rely on conclusory allegations or unsubstantiated speculation") (internal quotation marks and citations omitted); *Nelson v. Artus*, No. 16-cv-6634, 2016 WL 1023324, at *2-3 (W.D.N.Y. March 8, 2016) (concluding that inmate's 42 U.S.C. § 1983 action could not withstand a motion for summary judgment because inmate did not provide a copy of a grievance appeal referenced in his complaint and defendant

submitted affidavits from a prison official who had unsuccessfully searched prison records for a copy of the grievance appeal in question).

Based on the evidence submitted by the defendants regarding the lack of grievances filed by Mr. Chambers that pertain to the claims that remain in this action, the defendants have sustained their burden of demonstrating that there are no issues of material fact as to the exhaustion of the plaintiff's claims.  The motion for summary judgment is granted on the ground that the plaintiff failed to properly and fully exhaust his available administrative remedies as to the remaining claims in this action.[5]

**IV. Conclusion**

Defendants' Motion for Summary Judgment [**Doc. No. 22**] is **GRANTED**.  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this _____ day of _____, 2016.

_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court has granted the motion for summary judgment on the ground of lack of exhaustion of administrative remedies, the Court does not reach the defendants' arguments related to merit of the plaintiff's remaining claims.